# Constitutionality of Amended Version of the Indian Land Consolidation Act

As amended, the Indian Land Consolidation Act should survive a constitutional challenge under the Takings Clause of the Fifth Amendment because it does not completely abolish both descent and devise of Indian trust lands.

Consistent with the Due Process Clause, the amended Act may be applied only to those allottees given a "reasonable opportunity" to arrange their affairs to avoid escheat.

March 4, 1988

MEMORANDUM OPINION FOR THE SOLICITOR
DEPARTMENT OF THE INTERIOR

You have requested the opinion of this Office on the constitutionality of 25 U.S.C. § 2206, the "escheat" provision of the Indian Land Consolidation Act of 1983, Pub. L. No. 97–459, § 207, 96 Stat. 2515, 2519, as amended by Pub. L. No. 98–608, § 1(4), 98 Stat. 3171, 3172 (1984). Amended section 2206 prohibits intestate descent of certain fractional interests in allotment lands and limits testamentary devise of those interests to persons who already own an interest in the same land. Section 2206 further provides that the fractional interests of owners of allotted lands who died intestate or who attempted to devise their interest to persons who did not already hold an interest in the land escheat to the tribe that has jurisdiction over the land. Although the issue is not free from doubt, we believe that the restrictions that section 2206 imposes on the possibility of descent and devise will withstand a challenge under the Takings Clause of the Fifth Amendment. We also conclude, however, that due process requires that the escheat provisions of section 2206 be applied only against landowners who had a reasonable opportunity to arrange their affairs to avoid forfeiture of their interests.

## Background

Current section 2206 is an amended version of section 207 of the Indian Land Consolidation Act of 1983, Pub. L. No. 97–459, 96 Stat. at 2519. As originally enacted, section 207 provided that:

> No undivided fractional interest in any tract of trust or restricted land within a tribe's reservation or otherwise subjected to a tribe's jurisdiction shall [descend] by intestacy or devise but shall escheat to that tribe if such interest represents 2 per centum or less of the

41

total acreage in such tract and has earned to its owner less than
$100 in the preceding year before it is due to escheat.

In *Hodel v. Irving*, 481 U.S. 704 (1987), the Supreme Court invalidated original section 207. The majority of the Court, in an opinion by Justice O'Connor, held that the complete abrogation of the right to dispose of property at death by descent or devise constituted an uncompensated taking in violation of the Just Compensation Clause of the Fifth Amendment. Justice Stevens, writing for himself and Justice White, agreed that section 207 was unconstitutional, but on the ground that the statute effected a denial of property without due process of law because it did not afford holders of fractional interests "a reasonable opportunity to make *inter vivos* dispositions that will avoid the consequences" of the law. *Id.* at 726.

Congress amended section 207 to make three changes in the statute.[1] The first concerns the definition of fractional interests covered by the law. Where old section 207 applied to fractional interests of 2% or less of a tract that earned $100 or less in the year prior to escheat (*i.e.*, the year prior to the death of the allottee), the new version applies to fractional interests of 2% or less that are "incapable of earning $100 in any one of the five years from the date of decendent's death." 25 U.S.C. § 2206(a). The fact that the fractional interest earned "less than $100 in any one of the five years before the decedent's death . . . [constitutes] a rebuttable presumption that such interest is incapable of earning $100 in any one of the five years following the death of the decedent." *Id.* This change was made to prevent the escheat of valuable land that had, because of temporary market conditions, failed to earn $100 in the year preceding the allottee's death.

The second change made by the 1984 amendments was the elimination of the total ban on dispositions of covered interests by testamentary devise. The statute now permits disposition by devise of a covered interest "to any other owner of an undivided fractional interest in such parcel or tract." 25 U.S.C. § 2206(b). Finally, the statute provides that its escheat provisions may be superseded by tribal law, subject to the approval of the Secretary of the Interior. The Secretary may not, however, approve any alternative tribal scheme "that fails to accomplish the purpose of preventing further descent or fractionation of such escheatable interests." 25 U.S.C. § 2206(c).

The critical difference between the current statute and its predecessor is that the former does permit some testamentary disposition of fractional interests.[2] The

---

[1] The amendment occurred after the escheat of the interests involved in *Hodel v Irving*, but before appellate review of the resulting lawsuit The Eighth Circuit declared that both the original and amended versions of the statute were unconstitutional *Irving v Clark*, 758 F.2d 1260, 1261 n.1, 1269 (8th Cir 1985). The Supreme Court dismissed the latter "declaration" as "at best, dicta," and explicitly declined to rule on the constitutionality of the amended statute. *Hodel v. Irving*, 481 U S. at 710 n.1.

[2] We believe that only the second change, the relaxation of the ban on descent or devise of fractional interests, is significant for purposes of constitutional analysis. The narrowing of the definition of interests subject to escheat under the act has no bearing on the constitutionality of the escheat of interests that are covered. Similarly, the invitation to enact alternative procedures under superseding tribal law gives no greater legitimacy to the statutorily prescribed procedures applicable if the invitation is refused, particularly since no individual allottee has the authority to require the tribe to accept the invitation.

allottee's right to transfer property at death is therefore not wholly destroyed. The amended statute does not, however, provide any grace period for allottees to make inter vivos dispositions to avoid escheat of their interests. Accordingly, two constitutional issues are presented by the amended statute; first, whether the limited right to transfer that remains is sufficient to render the statute a permissible regulation rather than an impermissible taking, and second, whether the absence of a grace period makes the escheat of a covered interest a deprivation of property without due process of law.

## Analysis

The Court in *Hodel v. Irving* condemned original section 207 because it completely abolished "both descent and devise of these property interests even when the passing of the property to the heir might result in consolidation of property." 481 U.S. at 718. Although recognizing Congress' "broad authority to regulate the descent and devise of Indian trust lands," *id.* at 712, and even though conceding the legitimacy of the government's purpose in seeking consolidation of these small interests, *id.*, the Court held that the *"total* abrogation" of any possibility of descent or devise of covered interests constituted an unlawful taking. *Id.* at 717.

The Court's opinion, however, includes important dicta suggesting that the United States retains broad power to restrict descent and devise of such Indian lands in a manner not dissimilar to the restriction at issue here. The opinion acknowledges the "long line of cases recognizing the States', and where appropriate, the United States', broad authority to adjust the rules governing the descent and devise of property without implicating the guarantees of the Just Compensation Clause." *Id.* It then explicitly states that some limitations on an allottee's ability to transfer his fractional interest at death would be constitutional. "Surely it is permissible for the United States *to prevent the owners of such interests from further subdividing them among future heirs on pain of escheat." Id.* at 718 (emphasis added). What the Court could not countenance, what made "[t]he difference in this case," was "the fact that both descent and devise are completely abolished." *Id.* at 717.

Amended section 2206 does not suffer from this critical defect. It does eliminate descent of covered interests by intestate succession, and it restricts devise of such interests to other holders of fractional interests in the same tract. This provision obviously limits an allottee's ability to choose his devisee, since only devises to other holders of interests in the property are permitted. But the Court has already indicated that limiting the allottee's choice by requiring the transfer of his entire interest to a single devisee, as opposed to subdividing the interest among several devisees, would "[s]urely . . . [be] permissible." *Id.* at 718. Moreover, the Court's opinion recognized that "[t]he Government has considerable latitude in regulating property rights in ways that may adversely affect the owners," *id.* at 713, and cited with approval the case of *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987), in which the Court reaffirmed the principle

that "'[w]here an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking.'" *Id.* at 497 (quoting *Andrus v. Allard*, 444 U.S. 51, 65–66 (1979)).

Amended section 207 admittedly would preclude, absent some inter vivos transaction, transfers by devise from one generation to the next. It is not uncommon, however, for the law to limit a testator's ability to transfer property to the next generation. The rule against perpetuities and the statutes providing for a forced share for a surviving spouse are obvious examples of legal rules that restrict a testator's ability to transfer property to his descendants. The spouse's elective share statutes typically require that one-third to one-half of the estate be left to the surviving spouse.[3] By contrast, the interests at stake here, which range in size from modest to infinitesimal, will typically constitute a much smaller portion of an allottee's estate. We believe, therefore, that the escheat provisions of the amended statute would not be unconstitutional under the majority's takings analysis in *Hodel*.

We do not have the same confidence with respect to the due process issue. As noted earlier, Justice Stevens found original section 207 unconstitutional because it did not allow allottees whose interests would be subject to escheat sufficient opportunity to make inter vivos arrangements to avoid the effects of the statute. The plaintiffs' decedents in the three cases decided by *Hodel* died between two and five months after the effective date of the Indian Land Consolidation Act. Justice Stevens concluded that the statute unconstitutionally deprived plaintiffs' decedents of their property without due process of law because they were not afforded "a reasonable grace period . . . to put their affairs in order." 481 U.S. at 733.

Justice Stevens' concurrence is particularly important because he wrote the majority opinion in *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), the leading Supreme Court case on due process limitations on forfeiture statutes. *Texaco* involved the constitutionality of an Indiana statute that provided that mineral rights that were unused for a period of twenty years would be extinguished and revert to the owner of the surface estate, unless the owner of the rights filed a statement of claim prior to the end of the twenty year period. The statute contained a two-year grace period in which owners of interests subject to forfeiture at the time the statute took effect could file a statement of claim and retain their rights.

The statute's constitutionality was challenged by owners of mineral rights that were unused for twenty years or more at the time the statute took effect and who failed to file statements of claim within the two-year grace period. The owners of the lapsed interests claimed that they had been deprived of their property without due process of law, because they had not received notice of the imminent lapse of their interests. The Court, by a 5 to 4 margin, rejected this claim, holding that to initiate a new legislative scheme that adversely affected property rights,

---

[3] We recognize that these laws do not operate under pain of escheat and thus may be distinguishable from the statute at issue here. The *Irving* Court, however, specifically stated that restrictions may be enforced "on pain of escheat." 481 U.S. at 718.

a state "need do nothing more than enact and publish the law, *and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.*" 454 U.S. at 532 (emphasis added).[4]

The amended version of section 2206 does nothing to provide a grace period that will afford the owner of the lands at issue "a reasonable opportunity to familiarize itself with its terms and to comply," since technically the amended statute was effective upon enactment. We believe, therefore, that applying the standard of *Texaco*, the Supreme Court would hold that escheat of a property interest without affording the owner any opportunity to avoid the forfeiture would violate the Due Process Clause.[5] Accordingly, we believe it likely that the Supreme Court would find that amended section 2206 effects an unconstitutional deprivation of property without due process of law as applied to any allottee who did not have a reasonable opportunity to arrange his affairs to avoid forfeiture of his interest.

We understand that final disposition of escheatable interests belonging to allottees who have died since enactment of the amended statute has been stayed pending the opinion of this Office. Your Department has also taken steps to advise Indian landowners subject to section 2206 of its provisions and effects. These steps have varied from agency to agency, but have included such measures as written notices sent to all landowners, written notices sent to all tribes, public meetings to explain the law, publication of articles in local newspapers, and oral notice to landowners who visited agency offices. Some agencies have provided comprehensive information to all individual landowners, while other agencies appear to have taken no action whatever.

The Supreme Court has not specified what constitutes a "reasonable opportunity" for those affected to familiarize themselves with law and avoid forfeiture. In the *Texaco* case, a two-year grace period was deemed sufficient, even though there was no effort by the state to bring the forfeiture law to the attention of the owners of affected mineral interests. On the other hand, plaintiffs' decedents in *Hodel v. Irving* died between two and five months after the enactment of original section 2206. Justices Stevens and White concluded that they had not had "anything approaching a reasonable opportunity to arrange for the consolidation of their respective fractional interests with those of other owners." 481 U.S. at 732–33.

---

[4] The four dissenting justices argued that the unusual nature of the Indiana statute required more than simple publication and a reasonable grace period. *See Texaco*, 454 U S at 542 (Brennan, J. dissenting) They would have required individual notice and an opportunity to cure before any mineral rights could be forfeited.

[5] We are fortified in this conclusion by considering the votes of individual justices in *Hodel v. Irving*. Justices Stevens and White voted to strike down the original section 2206 because it lacked a grace period and would presumably find the same omission in the amended version equally objectionable. We assume that the dissenters in *Texaco* (Justices Brennan, White, Marshall, and Powell), who argued in that case that due process required both a reasonable grace period *and* individual notice of the impending forfeiture, would share that view With Justice Powell's retirement, there are four sitting justices who have already expressed views strongly indicating amended section 2206 is unconstitutional. We have no reason to believe that the other members of the *Texaco* majority who voted to uphold the Indiana statute containing a two-year grace period on the ground that such a period provided those affected a reasonable opportunity to comply with the law would uphold amended section 2206, which contains no grace period whatever.

45

Although the lack of Supreme Court and lower court authority defining what constitutes "a reasonable opportunity" makes this standard difficult to apply, common sense suggests that there is an inverse relationship between the government's efforts to publicize a forfeiture statute and the length of time constitutionally required for the grace period. In other words, if the government simply publishes a forfeiture statute in the normal manner and relies on word of mouth to spread the news, a longer grace period may well be required than if the government makes extraordinary efforts to bring the statute to the attention of affected persons.

In the instant case, the efforts by the Department of the Interior to bring amended section 2206 to the attention of affected Indian landowners have varied widely. Because your Department is much better able than we to determine the effectiveness of its notification efforts, we believe you are in a better position to determine when affected landowners have been afforded a "reasonable opportunity" to adjust their affairs.[6]

## Conclusion

The very nature of the Court's takings jurisprudence, which requires an "essentially ad hoc" analysis of factors "such as the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the governmental action," *Kaiser Aetna v. United States*, 444 U.S. 164, 175 (1979), *quoted in Hodel v. Irving*, 481 U.S. 704, 714 (1987), precludes certainty in resolving the question posed by your letter. It is true that amended section 2206 provides allottees only slightly greater opportunities to transfer their property at death than did the original version condemned in *Hodel*. Nevertheless, we believe that the crux of the Court's objection to the original statute, the *total* elimination of any transfer by descent or devise, has been eliminated. In view of Congress' broad authority to regulate the transfer of Indian lands, and the Court's acknowledgment of the seriousness of the fractionation problem, we believe amended section 2206 would survive constitutional challenge under the Takings Clause. We believe, however, that in order to comply with the requirements of the Due Process Clause, application of the statute must be limited to those allottees who had an adequate opportunity to adjust their affairs to avoid forfeiture of their interests.

JOHN O. MCGINNIS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[6] For whatever assistance it may be, however, we offer one observation. The amendment of section 2206 was enacted on October 30, 1984, and took effect immediately. The first step by the Department of the Interior in publicizing the new statute appears to have been a directive sent by the Deputy to the Assistant Secretary-Indian Affairs (Operations) to all Area Directors on January 25, 1985, advising that "Area Offices and Agencies are urged to provide all Indian landowners under their jurisdiction with notice of [section 2206's] effects." *See* Memorandum from the Acting Deputy to the Assistant Secretary-Indian Affairs (Trust and Economic Development) to all Area Directors (June 9, 1987) Thus those agencies that took any steps at all to notify their clients of the law did so no earlier than February 1985. We suggest that a reasonable grace period may therefore have to extend several months from February 1985.